## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| LEROY DANIELSON, SILICONE DISTRIBUTORS, INC. d/b/a ROOFTOPS, and TRADEMARK ENTERPRISES, LLC d/b/a LISA'S PAINT SHOP, on behalf of themselves and all others similarly situated, <br><br>Plaintiffs, <br><br>v. <br><br>TROPICAL SHIPPING AND CONSTRUCTION CO., LTD., VI CARGO SERVICES, LLC, and SALTCHUK RESOURCES, INC., <br>Defendants. | 2015-CV-___ <br><br>**JURY TRIAL DEMANDED** <br><br>CLASS ACTION FOR DAMAGES |

## CLASS ACTION COMPLAINT

Leroy Danielson, Silicone Distributors, Inc., and Trademark Enterprises, LLC, on behalf of themselves and all others similarly situated, complain as follows:

### INTRODUCTION

1.  This is an antitrust class action under Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2, and the Virgin Islands Antitrust Act, 11 V.I.C. § 1503, against Tropical Shipping and Construction Co., Ltd. ("Tropical"), Deluxe Freight LLC, ("Deluxe") VI Cargo Services, LLC, ("VI Cargo") and Saltchuk Resources, Inc., ("Saltchuk") (collectively "defendants") based on defendants' monopolization of the less-than-a-container ("LCL") cargo shipping market between St. Croix and Florida (hereafter collectively "the relevant market", "LCL market", or "market").  This market consists of the consolidation for shipment of less than a container of goods from St. Croix to Florida and from Florida to St. Croix.  Consolidators arrange for the shipment between St Croix

and Florida of goods amounting to less than one shipping container's worth. Beginning in 2008, Tropical, a subsidiary of Saltchuk, began acquiring its competitors in the LCL market. In September 2010, Tropical acquired VI Cargo, raising its share of the relevant market to 100%, thereby allowing it to charge anti-competitively high prices for the consolidation and shipment of goods between Florida and St. Croix. The plaintiffs are individual consumers and entities who directly paid Tropical and entities under its control to ship cargo between St Croix and Florida during the Class Period defined below.

## PARTIES

2. Plaintiff Leroy Danielson is a citizen of St. Croix, U.S. Virgin Islands. During the relevant time period, he directly purchased LCL services from Tropical and/or VI Cargo in connection with the shipment of goods between St. Croix and Florida and was overcharged for his purchase due to the acts alleged in this complaint.

3. Plaintiff Silicone Distributors, Inc., d/b/a Rooftops ("Rooftops"), is a Virgin Islands corporation with its principal place of business in St. Croix, Virgin Islands. During the relevant time period, Rooftops directly purchased LCL services from Tropical and/or VI Cargo in connection with the shipment of goods between St. Croix and Florida and was overcharged for its purchases due to the acts alleged in this complaint.

4. Plaintiff Trademark Enterprises, LLC, d/b/a Lisa's Paint Shop ("Lisa's Paint Shop"), is a Virgin Islands limited liability company with its principal place of business in St. Croix, Virgin Islands. During the relevant time period, Lisa's Paint Shop directly purchased LCL services from Tropical and/or VI Cargo in connection with the

shipment of goods between St. Croix and Florida and was overcharged for its purchases due to the acts alleged in this complaint.

5. Tropical Shipping and Construction Co., Ltd. is a Florida corporation with its principal place of business in Rivera Beach, Florida.

6. Deluxe Freight, LLC is a Florida corporation with its principal place of business in Rivera Beach, Florida.

7. VI Cargo Services, LLC is a Virgin Islands corporation with its principal place of business in Christiansted, St. Croix.

8. Saltchuk Resources, Inc., is a Washington corporation with its principal place of business in Tacoma, Washington. Saltchuk is the parent company of Tropical, Deluxe and VI Cargo.

## JURISDICTION

9. This action is brought under Section 2 of the Sherman Act and Section 4 of the Clayton Act, 15 U.S.C. § 15, to recover treble damages and costs, including reasonable attorneys' fees, as well as equitable and injunctive relief, against Tropical for the injuries sustained by plaintiffs and the members of the Class and caused by Tropical's violation of Section 2 of the Sherman Act. This Court therefore has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337. Supplemental jurisdiction over plaintiffs' territorial law claim is proper under 28 U.S.C. § 1367.

## GENERAL ALLEGATIONS

11. Individual consumers and small businesses buy items in the U.S. and ship them to St. Croix using LCL shipping companies. These consumers use the same LCL companies to ship goods from St. Croix to the U.S.

12. Only large businesses have enough cargo volume to ship full container loads of goods between St Croix and Florida. All LCL businesses have warehouses in Florida, and all shipments originate from or terminate in ports in Florida.

13. Tropical has been the dominant firm in the LCL shipping market for many years. During some of those years, as described below, two other companies, VI Cargo and Caribtrans, competed in the St. Croix LCL market.

14. In 2008, Tropical, either by itself or through entities it controlled, began acquiring the stock and assets of these competitors. In April 2008, Tropical purchased Caribtrans, boosting its market share in the St. Croix-Florida LCL market to 85-90%.

15. VI Cargo, Tropical's only remaining competitor as of April 2008, had a market share of 10-15% at the time of Tropical's acquisition of Caribtrans.

16. Deluxe, a sister corporation of Tropical, acquired VI Cargo in September 2010. VI Cargo remained a separate company under the operation and control of Tropical. Hereafter, "Tropical" refers to Tropical and VI Cargo collectively.

17. The acquisition of VI Cargo gave Tropical and the companies that it controlled 100% of the LCL market.

18. Within months of its acquisition of VI Cargo, Tropical increased its prices, and thereafter implemented general rate increases every few months. Just before the VI Cargo acquisition, VI Cargo charged customers $2.40 per cubic foot to ship LCL goods between St Croix and Florida. After the acquisition, and without any changes in its costs, Tropical raised its rates about 15 cents per cubic foot every few months. With no competing firms to turn to, Tropical's customers had no choice but to pay the higher prices.

19. In May 2013, a former employee of VI Cargo, Matthew Leonard, founded an LCL business on St Croix called Paradise Freight ("Paradise"). Paradise charged lower prices than Tropical for LCL services between St Croix and Florida. As a result, Paradise began attracting Tropical customers.

20. Competition from Paradise forced Tropical to lower prices for its major customers. According to Tropical's own sworn account, by early 2014, Tropical had lost 10-15% of the LCL market to Paradise, and its profit margins had fallen from 56% to 28%.

## RELEVANT MARKETS

21. For antitrust purposes, a relevant product market generally includes all products reasonably interchangeable by consumers for the same purposes. Reasonable interchangeability may be gauged by: (1) the product uses, i.e., whether substitute products or services can perform the same function; or (2) cross-elasticity of demand; i.e., consumers' shifting their purchases from one product to another in response to a price increase in the first product.

22. The relevant product market here is LCL shipping services between St. Croix and Florida. There are no reasonable substitute services for consumers on St Croix needing to ship small volumes of goods between St. Croix and Florida.

23. The relevant geographic market, in general, is the area in which a potential buyer may rationally look for the goods or services he seeks. A properly defined geographic market includes those areas in which potential suppliers can readily offer consumers suitable alternatives to the defendant's services.

24. The relevant geographic market in this matter is St. Croix. That is the only place where St. Croix consumers can look to ship goods to and from the States. Simply put, a St. Croix consumer cannot ship goods with a company that does not ship to and from St. Croix. Shippers servicing other Caribbean islands -- but not St. Croix -- are not alternatives for St. Croix consumers.

## MONOPOLY POWER

25. Monopoly power is the power to control prices or exclude competition. More precisely, a firm is a monopolist if it can profitably and durably raise prices substantially above the competitive level. A market share of over 70 percent is strong evidence of monopoly power. As of September 2010, Tropical's market share was 100%.

26. The acquisition and maintenance of monopoly power depend in part upon the presence of barriers to entry in the relevant market. There are significant barriers to entering the LCL market on St Croix. Entry requires, among other things, a significant capital investment relative to the size of the market, a reputation for competent service, and the creation of relationships of trust between customers and consolidators. These barriers to entry have enabled Tropical to maintain its wrongfully acquired monopoly power in the relevant market, and to charge supra-competitive prices to LCL customers.

27. Tropical's sales accounted for 100% of the relevant market for about three years -- from fall 2010 to summer 2013, when Paradise entered the market.

## EXCLUSIONARY CONDUCT

28. Tropical willfully acquired 100% of the LCL market through the purchase of, and merger with Caribtrans in 2008 and VI Cargo in 2010. It is unlawful to acquire a monopoly through merger.

29.     On information and belief, Tropical has continued to maintain a monopoly in the LCL market, following Paradise's entry in summer 2013, following which Tropical's share of the market leveled off at 80%. While competition from Paradise has resulted in lower prices for consumers in the LCL market, those prices nevertheless remain above competitive levels. This is because Paradise fears that if it lowers prices to fully competitive levels, Tropical will engage in predatory conduct by lowering its prices below its costs to drive Paradise out of the market. Prior to 2010, Tropical engaged in predatory pricing in the relevant market, to anti-competitive effect, and Paradise is aware of that pricing behavior and its effects on Tropical's then-rivals.

## DAMAGES

30.     On January 16, 2015, a Tropical representative testified under oath in an evidentiary hearing before a Florida judge that Tropical's operating margins declined from 56% to 28% as a result of the competition created when Paradise entered the market. The higher margins realized by Tropical before Paradise's entry represent the monopoly overcharges paid by those class members who purchased LCL services from Tropical before Paradise's entry. On information and belief, class members who purchased LCL services after Paradise entered the market still paid anticompetitive prices because (a) Tropical maintained its monopoly and (b) Tropical's reputation for predatory pricing caused Paradise to price less competitively than it would otherwise have done, for fear of predatory retaliation by Tropical.

## CLASS ALLEGATIONS

31. Plaintiffs bring this lawsuit on behalf of himself and as a class action pursuant to Rules 23(a) of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons who, or entities that, directly purchased LCL shipping services from Tropical to ship goods between St. Croix and Florida from September 18, 2010 to the present (the "Class Period"). Excluded from the Class are defendants, their current and former parent companies, subsidiaries, affiliates, and employees.

32. Plaintiffs do not know the exact number of Class members because this information is in the control of Tropical. Based upon the nature of the trade and commerce involved, plaintiffs believe the Class numbers in the thousands.

33. There are numerous questions of law and fact common to the Class, including most importantly whether defendants' conduct is a violation of Section 2 of the Sherman Act.

34. The Class is so numerous that joinder of all members is impracticable.

35. In addition, the following questions of law and fact are common to the Class (a) the definition of the relevant market; (b) whether defendants willfully acquired and/or maintained their monopoly power through illegitimate means; and (c) whether the effect of defendants' acquisition has been to substantially lessen competition, to create a monopoly, and to charge Class members supra-competitive prices, at all times relevant to this Complaint.

36. Plaintiffs' claims seeking monopoly overcharge damages as direct purchasers of Tropical's shipping services are typical of the claims of Class members.

37. Plaintiffs are represented by experienced counsel and will fairly and adequately protect the interests of the Class.

38. Defendants have acted on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole.

39. The above-described questions of law and fact common to the Class predominate over any questions affecting only individual members.

40. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. There are no significant foreseeable difficulties involved with managing a direct purchaser class action seeking overcharge damages for defendants' antitrust violations.

## ANTITRUST INJURY AND STANDING

41. As direct purchasers of Tropical's shipping services at anti-competitively inflated prices, plaintiff and the other Class members have suffered antitrust injury and have standing to pursue all of the federal and state law antitrust claims set forth below

## FIRST CLAIM FOR RELIEF
### (Monopolization Under Section 2 of the Sherman Act)

42. Plaintiffs incorporate by reference paragraphs 1-41, above.

43. Section 2 of the Sherman Act makes it unlawful to "monopolize, or attempt to monopolize, . . . any part of the trade or commerce among the several States." 15 U.S.C. § 2.

44. Tropical monopolized the LCL market in violation of Section 2 of the Sherman Act.

45. Tropical, by and through its officers, directors, employees, agents, and/or other representatives, engaged in anticompetitive conduct, as set forth above, that was intended to and had the effect of illegally establishing and maintaining Tropical's monopoly in the LCL market.

46. Tropical has effectively eliminated competition from a significant and substantial portion of the LCL market, unlawfully expanded and maintained its market share, and profited from its anticompetitive conduct by setting and maintaining prices at artificially high levels and by otherwise reaping the benefits of its illegally obtained and maintained monopoly power.

47. There is no legitimate business justification for Tropical's anticompetitive conduct through which it wrongfully established, expanded, and maintained monopoly power in the LCL market.

48. As a result of Tropical's violation of Section 2, plaintiffs have suffered antitrust injury and incurred damages in the form of paying artificially inflated prices for LCL shipping services.

## SECOND CLAIM FOR RELIEF
### (Monopolization Under 11 V.I.C. § 1503)

49. Plaintiffs incorporate by reference paragraphs 1-48, above.

50. Under 11 V.I.C. § 1503, it is unlawful to establish, maintain, use or attempt to acquire monopoly power over any substantial part of trade or commerce of the United States Virgin Islands for the purpose of excluding competition or of controlling, fixing, or maintaining prices in such trade or commerce.

51. Tropical monopolized the LCL market in violation of § 1503.

52.     Defendants, by and through their officers, directors, employees, agents, and/or other representatives, engaged in anticompetitive conduct, as set forth above, that was intended to and had the effect of illegally establishing and maintaining Tropical's monopoly in the LCL market, thus enabling it to control and maintain prices in that market.

53.     Tropical has effectively eliminated competition from a significant and substantial portion of the LCL market, through unlawful mergers, and has maintained its market share, and profited from its anticompetitive conduct by setting and maintaining prices at artificially high levels and by otherwise reaping the benefits of its illegally obtained and maintained monopoly power.

54.     There is no legitimate business justification for Tropical's anticompetitive conduct through which it established, expanded, and maintained monopoly power in the LCL market.

55.     As a result of Tropical's violation of 11 V.I.C. § 1503, plaintiffs have suffered antitrust injury and incurred damages in the form of paying artificially inflated prices for LCL shipping services.

**PRAYER FOR RELIEF**

For the reasons set forth above, plaintiffs request that the Court: (a) determine that this action may be maintained as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure and direct that reasonable notice of this action, as provided by Rule 23(c)(2), be given to the Class; (b) adjudge defendants' conduct to violate Section 2 of the Sherman Act, 15 U.S.C. § 2; (c) permanently enjoin and restrain defendants, their affiliates, successors, transferees, assignees and officers, directors,

partners, agents and employees thereof as well as all other persons acting or claiming to act on their behalf or in concert with them, from in any manner continuing or maintaining the conduct alleged herein; (e) award plaintiffs and members of the Class three times the amount of the damages sustained by them, as allowed by law; (f) award plaintiffs and the Class the costs of this action, including reasonable attorneys' fees, as allowed by law; (g) award plaintiffs and the Class pre-judgment and post-judgment interest at the highest legal rate from the earliest date allowable to the extent provided by law; and (h) grant plaintiffs and the Class such other, further, or different relief as the case may require and the Court may deem just and proper.

Respectfully submitted,

**COLIANNI & COLIANNI, LLC**
Attorneys for Plaintiffs

DATED: May 28, 2015

By: /s/Vincent Colianni, II
Vincent Colianni, II
Vincent A. Colianni
1138 King Street
Christiansted, VI 00820
Telephone: (340) 719-1766
Facsimile: (340) 719-1770

Of Counsel:

**TOMASIK KOTIN KASSERMAN, LLC**
Attorneys

By: /s/Timothy S. Tomasik
Timothy S. Tomasik
10 S. LaSalle Street, Suite 2920
Chicago, Illinois 60603
Telephone: (312) 605-8800
Facsimile: (312) 605-8808